(No. 22714.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ERNEST SCHNEIDER, Plaintiff in Error.

*Opinion filed February 21, 1935—Rehearing denied April 10, 1935.*

44

THOMAS J. JOHNSON, SR., and THOMAS J. JOHNSON, JR., for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. Justice Stone delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of manslaughter with a motor vehicle. He was charged in the indictment with thus killing one John A. Kochannek. He argues numerous assignments of error hereinafter considered.

The collision by which the deceased, Kochannek, lost his life occurred at the intersection of Clark and LaSalle streets and Stockton drive, in the northern part of the city of Chicago. Clark and LaSalle streets are parallel north and south streets until they approach Lincoln Park, when the former curves northwest across the latter. Stockton drive is the extension of LaSalle street and is a driveway into Lincoln Park. About midnight or early morning of December 23, 1933, one Thomas Dunleavy, accompanied by Lucille Million, was driving his car in a southeasterly direction (usually designated in the evidence as south) on Clark street. As they approached the intersection of La-Salle and Clark streets and Stockton drive his car was struck by an automobile which came up Clark street, turned in front of him into Stockton drive and disappeared. Dunleavy's car was turned over and came to rest on its right side on the street car tracks on Clark street, in the street intersection. The car lay in a northwesterly and southeasterly direction, with the top lying toward the south. Dunleavy found he could not get out of the car and called for help. At about that time one Fred Delacker was driving north on Clark street, and seeing the overturned car as he approached the intersection brought his car to the curb about one hundred feet south of the intersection. Kochannek was a passenger in Delacker's car, and he and Delacker ran over to the overturned car and opened one of its doors and Dunleavy climbed out. As Kochannek and one Cohen, a taxicab driver, were endeavoring to right Dunleavy's car, a LaSalle sedan driven by plaintiff in error crashed into the overturned car, injuring Kochannek and Cohen so se-

verely they died. These facts are not disputed. There is, however, sharp dispute in the evidence as to certain important facts upon which the guilt or innocence of the accused largely depends. One of such questions of fact is whether plaintiff in error's opportunity to see the overturned car was affected by the presence of another car moving north on Clark street just ahead of him and which turned off into Stockton drive just in time to avoid colliding with Dunleavy's overturned car, leaving little or no time to plaintiff in error to avoid the collision. Other issues of fact contested are whether plaintiff in error was driving at an excessive rate of speed and whether he was intoxicated.

Three witnesses and plaintiff in error testified that a large dark car preceded him, coming from the south on Clark street about twenty or twenty-five feet ahead of him; that on coming to the intersection the first car suddenly checked up and then veered to the right into Stockton drive, barely missing the overturned car, and that plaintiff in error, in the car behind, crashed into the overturned car and those who were attempting to right it. The first to so testify was one Emil Gatterfeld, a witness for the People. He testified that he was on the front platform of a southbound Clark street car and saw the Dunleavy car turn over on the track; that he got off the street car, and while walking toward the Dunleavy car saw two automobiles approaching from the south, about twenty to twenty-five feet apart; that the first car made a fast turn into Stockton drive, missing the overturned car by a short distance, and the second car following immediately behind the first crashed into the wreck. He testified that plaintiff in error was driving about fifteen miles an hour.

Sidney Lust, a witness for plaintiff in error, testified that he heard the crash of the overturning of Dunleavy's car and immediately went to the scene. While walking toward Dunleavy's car he saw two cars coming north on

Clark street. The first turned into Stockton drive and the second ran into the overturned car. He also testified that as the first car approached the wreck it suddenly slackened its speed and swung into Stockton drive close to the overturned car; that the second car was about twenty feet to the rear of the first car, and that it slackened speed to some extent but crashed into the overturned car. He testified that plaintiff in error was traveling at about fifteen miles an hour.

One James Schultz testified that he, too, heard the crash of the Dunleavy car and ran to the window of the hotel where he was staying, in that neighborhood, and saw that the car had been turned over. He ran down-stairs, and as he reached the corner of the street he stopped for the street lights to change and at that time saw two cars approaching from the south on Clark street. The first car was about twenty or twenty-five feet ahead of the second. When the first car came within about fifteen feet of Dunleavy's car it turned rather fast into Stockton drive and the second one crashed into the overturned car.

Plaintiff in error testified on this matter that as he approached the intersection he was following a car about fifteen or twenty feet ahead of him; that the traffic light turned green, rendering a stop unnecessary; that he was driving directly back of the car that preceded him; that he could not see up Clark street on account of the presence of the first car; that the latter suddenly came almost to a stop and instantly turned to the right, at which time plaintiff in error's car was brought up to within about five feet of the first car, and that when it drove from in front of him he saw for the first time the overturned car lying directly in front of him in the street. He testified that he applied the brakes with all the force he could, but it was too late to have any effect, as he was then within but a few feet of the overturned car.

Delacker testified that after he had stopped his car and he and Kochannek had gotten to the overturned car, he, Delacker, saw a car approaching and stood on the street car track and endeavored to signal it to stop. He stated that it was plaintiff in error's car and that he did not see any other car coming from the south. Delacker's testimony as to waving to the approaching car is disputed by Gatterfeld, who testified that he did not see Delacker or anybody in the street waving his hands for plaintiff in error to stop. The witness Schultz also testified that he did not see anybody in the middle of the car track waving his hands. Herbert Annas, who was assisting in righting the overturned car and who was also struck by plaintiff in error's car, likewise testified that he did not see anyone standing in the car track signaling for a car to stop. Plaintiff in error also testified that he saw no one standing in the car track signaling him to stop. The only testimony corroborating Delacker in this statement is that of his wife. Other witnesses testified as to what happened at the time of the injury. No one else testified as to whether there was another car preceding plaintiff in error or as to anyone waving to him to stop. Lucille Million testified that before she was able to get out of the Dunleavy car plaintiff in error's car crashed into the overturned car.

As to whether plaintiff in error was driving at an excessive rate of speed there is but one witness, Delacker, who estimated the speed of plaintiff in error's car in excess of eighteen miles. He testified that in his opinion the car was driven possibly twenty-five miles an hour. All of the other witnesses, some of whom were People's witnesses, testified that in their opinion the speed did not exceed fifteen to eighteen miles an hour. Delacker's credibility is affected by the fact that it was shown as attempted impeachment that he had testified before the coroner's inquest that plaintiff in error's car was going from fifteen to eighteen miles an hour.

On the disputed fact as to whether plaintiff in error was intoxicated the testimony is in irreconcilable conflict. Some witnesses testified that they smelled liquor on plaintiff in error's breath and that he was unable to walk without staggering. Such was the testimony of the police officers who made the arrest and who talked with him at the police station. Others testified that they did not smell intoxicating liquor about plaintiff in error's person, though they made an attempt to find out whether he was intoxicated because of expressions heard in the crowd that it was another case of a drunken driver. Two of the police officers testified that in a conversation with him when being asked who he was, he said his name was Insul, and that he could not give an accurate description of where he was but said he presumed he was on the South Side. This is denied by plaintiff in error. Dunleavy, who was a police officer, testified that at the time of the crash he went to the door of plaintiff in error's car and found it locked. He told him to open it, but that plaintiff in error seemed slumped over the wheel, and that he, Dunleavy, broke the glass in the door of the car, opened the door and pulled plaintiff in error out. He testified that he considered him intoxicated. Louis Stoltz testified that he was with plaintiff in error from 9:00 o'clock on the night of the accident until a few minutes before it occurred and that the plaintiff in error was sober when he left him. Plaintiff in error also testified that he had had but two glasses of beer, which he drank at a meeting of men of his business which was held for the purpose of discussing their business affairs. Some of the witnesses testified that when plaintiff in error was taken out of the car he was holding his hands on his stomach and on his head and that his right hand was bleeding.

Dr. Louis Fishman testified that he was called to the home of plaintiff in error a few days after the accident and found him in bed; that on examination he found an

incomplete fracture of the eleventh right rib, a bump on the right side of his forehead, a cut on his right hand, which was beginning to heal, and bruises on his right elbow and the right side of his body. Plaintiff in error testified that when the crash came he was thrown against the wheel, and that when Dunleavy demanded that he open the door he was unable to do so or to talk because of the shock from his injuries.

Without detailing more of the evidence it is apparent from what has already been stated that the evidence is in sharp conflict on important issues of the case. It was a matter of substantial importance, as affecting the question of criminal negligence on the part of the plaintiff in error, to know whether a car immediately preceded his, shutting off, in part at least, his view of the street ahead of him, which car turned into Stockton drive so close to the overturned car as to prevent plaintiff in error seeing it in time to avoid the collision. Other important issues of fact are whether plaintiff in error was intoxicated and the speed at which he was driving. There seems little question that as to the last point the weight of testimony was that the speed of plaintiff in error's car did not exceed fifteen to eighteen miles an hour. Such speed would not, of itself, constitute criminal negligence unless plaintiff in error had reason to know that the overturned car was in his path. It is apparent from what has been said that to sustain the finding of the jury on so sharply contradicted questions of fact the record must be free from prejudicial error.

Plaintiff in error's counsel contend that he was not represented on the trial by competent counsel. This complaint is without merit. His counsel was of his own choosing. The record as set out in the abstract does not afford a basis for such complaint.

It is contended that the *corpus delicti* was not proved. The basis of this point is that the indictment charged the killing of John A. Kochannek whereas the evidence shows

the death of John Kochawnek, and that the record does not show that the man reported to have died is the man who was injured. The coroner's physician testified that at an inquest held on December 23 he examined the body of John A. Kochanek, who was identified by Fred Delacker, a friend. Delacker was a witness in this case. The coroner's physician also testified as to the cause of death. Proof of *corpus delicti* must contain two essential elements: the fact of the death and the criminal agency of some person as the cause of death. (*Hoch* v. *People*, 219 Ill. 265; *Campbell* v. *People*, 159 id. 9.) The *corpus delicti* must be clearly proved, but it may be proved by circumstantial evidence. No universal and invariable rule can be laid down as to what will amount to sufficient proof of such facts, as each case must depend upon its own peculiar circumstances. Where there is substantial evidence, direct or circumstantial, to establish the *corpus delicti,* it is primarily for the jury to pass upon its sufficiency. The testimony that John A. Kochannek was one of the men injured by plaintiff in error about 12:35 A. M. on December 23, and that he was taken from the scene of the accident in the police patrol to the same hospital where the inquest was held over the body of John Kochanek, showing the injuries which caused death to have been such injuries as were described in connection with this occurrence, constitutes evidence that the body over which this inquest was held was that of the man who was injured by the crash of plaintiff in error's car. Counsel argue that because of the difference in the spelling of the name of the deceased as that name appears in the indictment and proof, the rule of *idem sonans* can not be applied. With this we do not agree. The names Kochannek, Kochawnek and Kochanek are easily within the rule of *idem sonans*. Plaintiff in error was in nowise misled in the preparation of his defense nor deprived of the privilege of pleading former jeopardy on a later indictment for the same offense. We are of the opinion that this contention cannot prevail.

It is most earnestly argued that plaintiff in error is not shown guilty beyond a reasonable doubt. It is said that the evidence does not disclose such gross and wanton negligence as is required as the basis for conviction of manslaughter. It is evident from the position taken by the People that their theory is that the plaintiff in error was so drunk or intoxicated as to render his action in driving the car at all a criminal offense. The gist of the offense in a case of this character is criminal negligence. Negligence, to be criminal, must be reckless or wanton and of such a character as shows an utter disregard for the safety of others under circumstances likely to cause injury. (*People* v. *Adams,* 289 Ill. 339.) A lawful act negligently performed is not criminal. Criminal liability may not be predicated upon every act carelessly performed merely because such carelessness results in the death of another. (*People* v. *Anderson,* 310 Ill. 389.) Negligence, to become criminal, must necessarily be reckless or wanton and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury. (*People* v. *Adams, supra; People* v. *Falkovitch,* 280 Ill. 321.) In a case of this character the negligence which must be proved beyond a reasonable doubt is criminal negligence. Where one with willful and wanton negligence drives his automobile in such a reckless manner as to show utter disregard of the safety of others, and thereby runs over another and kills him, even though not intentionally, it is manslaughter. (*People* v. *Camberis,* 297 Ill. 455; Bishop's New Crim. Law, sec. 314.) In this case, as we have said, the question of criminal negligence on the part of plaintiff in error is affected by the question whether there was a car just ahead of him as he went north on Clark street. Certainly it cannot be argued that he was in wanton disregard of human life if he had no notice of or reasonable opportunity to know of or see an overturned car lying in his path, unless it can be said that he was so under the in-

fluence of intoxicating liquor as to render his driving at all a violation of the law. Some testified they smelled liquor on his breath; others testified they did not. There is no contradiction of the testimony that he staggered, but it is argued that a man with a broken rib and other injuries, which plaintiff in error received, and who was dragged out of his car in a dazed condition caused by those injuries, could scarcely be expected to walk without staggering. The statute defines involuntary manslaughter as the killing of a human being without an intent to do so in the commission of an unlawful act, or a lawful act, which probably might produce such consequence, in an unlawful manner. It is conceded in the briefs of counsel for plaintiff in error that if he was drunk or intoxicated at the time of the accident, and such drunkenness was the cause of the accident, he was guilty of manslaughter. It is evident that the jury believed that he was in such an intoxicated condition.

It is argued that the court erred in refusing to admit certain testimony of the witness Stoltz. Stoltz was an employee of plaintiff in error who was with him from 9:00 o'clock in the evening until 12:15. He was asked concerning orders plaintiff in error gave him before they parted. An objection to this was sustained. Plaintiff in error in his testimony stated that when he let Stoltz out of his car he gave him a paper. When asked what it was he gave him the People objected, and counsel for the defense urged that, as the People were making the contention that plaintiff in error was intoxicated, his knowledge as to what he did at about the time of the accident and his knowledge of what he then did was competent to determine whether he was possessed of his faculties. The court permitted him to answer as to what he did. Plaintiff in error testified that he took an envelope out of his pocket and wrote down instructions as to goods on which Stoltz was to work the next morning. On motion of the State's attorney this testimony was stricken. This was

error. It was competent for plaintiff in error to testify as to giving instructions to his employee for the next morning as affecting the question of his condition at the time of the accident, it being shown that Stoltz, his employee, left him but about fifteen minutes before the accident.

It is also urged that the State's attorney prejudiced plaintiff in error in his cross-examination of witnesses and in his argument to the jury. We have examined the abstract and find no error in the cross-examination of witnesses. It is said that the State's attorney in his argument referred to plaintiff in error as a "murdering driver," who, if he had stood with a machine gun in his hand, could have done no more than he did by his act. This was objected to and the objection was not sustained. This language is prejudicial. The charge was not murder, and it was prejudicial to the accused to argue, in effect, he was a murderer. There is nothing in the duty of a State's attorney which requires him to prejudice the rights of defendant to a fair trial in his eagerness to secure a conviction. (*People* v. *Sorrells,* 293 Ill. 591; *People* v. *Bimbo,* 314 id. 449.) In a case where the evidence is highly conflicting especial care should be used to avoid prejudicial argument.

It is also objected that the court erred in giving instructions to the jury. The record shows that counsel for plaintiff in error were given opportunity to object to proposed instructions and that no objections were offered. In this state of the record, and under section 67 of the Civil Practice act, made applicable to this case by rule 27 of the rules of this court, objections to instructions given are not open to plaintiff in error here.

The errors herein referred to, when occurring in a case so closely controverted on the important issues of fact, require a reversal of this judgment and a new trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*