(No. 25778.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAY BURGARD, Plaintiff in Error.

*Opinion filed September 15, 1941.*

JAMES W. FAULKNER, and JOHN P. HALEY, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, JAMES E. BURKE, State's Attorney, and CHARLES H. BLIM, for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Ray Burgard, was indicted in the circuit court of Will county for the involuntary manslaughter of Paul Markgraf with an automobile, and found guilty by a jury. Following the denial of motions for a new trial and in arrest of judgment, defendant was sentenced to imprisonment in the penitentiary and his driver's license revoked for one year. Defendant prosecutes this writ of error for a review of the record.

The fatal accident occurred about twenty minutes before six on Sunday evening, January 8, 1939, near the intersection of Washington street and Schorie avenue in Joliet, Illinois. Washington street runs east and west from the point of the accident, and is sixty-six feet wide, consisting of a concrete pavement twenty-nine feet in width, with one-way street-car tracks in its center and gravel shoulders at each side. According to the testimony of Arthur A. Clark, the only witness to the accident, the sky was overcast and the streets, being without lights, were entirely dark, when he and Markgraf, who was nine years

of age, and weighed about seventy pounds, started from the latter's home two blocks east of the place of the accident. Their intention was to obtain a bottle of cream at a store which was located four blocks west, on the north side of Washington street. They proceeded west on the south side of Washington street, facing any approaching traffic, walking close together, Markgraf holding Clark's right hand. Markgraf walked on the pavement, about one foot from the edge, and Clark on the gravel shoulder. Although he had seen no cars coming from either direction nor heard any warning, Clark heard a "swish," when they were about eight feet east of the Schorie avenue intersection, and Markgraf was thrown fifteen feet in the air and out of his sight in a southwesterly direction. Clark glanced up and observed a car traveling west on the north side of Washington street, approximately fifty feet beyond Park Road, which is the next intersecting street to the west, but he did not see its tail light. Without searching for Markgraf, he ran across Washington street to a grocery and meat market operated by William Mellish, located forty feet east of Schorie avenue, and reported the accident. While the owner and his nephew searched for Markgraf, Clark returned to the latter's home to inform his mother of the accident. Upon cross-examination, Clark stated that Markgraf had not brushed against him when hit, that he had not been moved, and that his wrist watch had not been damaged, asserting that he had been carrying it in his left hand. He insisted that he had been looking straight ahead, had not seen any automobiles or their lights, and had not heard the sound of tires nor the displacement of air. Confronted with his testimony at the inquest, Clark admitted having stated that Markgraf was walking on the pavement, four feet from its edge; that the accident occurred ten feet east of the Mellish store, which would place it fifty feet from the intersection, and that he had known a car was coming. The witness denied that he had said the car was approach-

ing from the west, but it was later stipulated that he had so testified.

William Mellish and his nephew testified that in the lights of a commandeered car they discovered Markgraf at a point 111 feet from where Clark insisted he had been hit, and took him to a hospital; and that, upon returning, they found articles of clothing lying in the center of the intersection on the car tracks, and also in front of the steps of a house 40 feet east of where he had lain. Mellish, who had been in front of the store, had not heard the impact. As he emerged from the store with Clark, the latter answered his inquiry as to where the accident had occurred by pointing to the east, again placing it more than 40 feet from the intersection. Mellish testified that at the time of the accident it was too dark to see anything beyond the lights of a tavern twenty feet west of Park Road. Park Road is one block west of Schorie avenue. Clark, however, placed the car, which he saw without tail lights after the accident, thirty feet west of the tavern. Mellish's nephew, seated in the living quarters in the rear of the store, testified he heard a noise and, glancing out of the window, observed a car with a light on the rear, going west near Park Road, but could not see it beyond the crossing. He testified that at least half a minute later Clark entered the store, but admitted, on cross-examination, having stated at the inquest that Clark entered three to five minutes later, which he believed to be more correct. He also testified that on prior occasions, usually on Sunday, he had seen Clark with Markgraf in his uncle's store, where coffe, cream and milk are sold.

Doctor Londus B. Brannon, who had examined the Markgraf body, expressed the opinion that a fracture of the vertebrae at the back of the neck, resulting from a blow, caused the death, although the skull was also fractured and there were bruises on the body. The witness found no fracture of the legs or pelvic bones.

Leonard Kochevar, a deputy sheriff, whom the defendant Burgard and his wife had known for a year, testified that he had received a call from Mrs. Burgard at five minutes before seven on the evening the accident occurred, requesting him to come at once to their home. He arrived there at 7:00 o'clock. In the presence of their son, the Burgard's informed Kochevar that when they had been driving west on Washington Street, near Jessie street, which is three blocks west of Schorie avenue, Mrs. Burgard thought the car hit a wagon or cart, though she was not certain. It does not appear at what hour this happened, or whether they had passed Schorie avenue. Kochevar promised to investigate and, about midnight, did inquire of another deputy sheriff regarding the Markgraf accident. In response to notice from the sheriff, defendant apparently reported to him the next morning.

The People introduced in evidence a dented left front fender taken from defendant's car, and a coat worn by Markgraf at the time of the accident. Clarence W. Muehlberger, chief chemist and toxicologist in the laboratory of the coroner of Cook county, testified that he had analyzed samples of cream colored material scraped from the fender and dissolved away from the coat, the latter sample, about half of a match head in bulk, being too small for a complete analysis; and that he found component parts of lacquers, including compounds of antimony and titanium, the former usually found only in more highly priced lacquers, and cellulose nitrate used as a resin. Upon cross-examination, the witness admitted having had no special experience with dry paint films and practically no experience with mixed and fresh paints. He also admitted that before starting his analysis he had learned from the manufacturer the ingredients of the paint used on the fender, and merely sought to discover whether the other sample contained the same constituent parts. He denied that he had stated the samples were of the same paint, and admitted that because

of the small quantity obtained from the coat he was able to determine only some of the ingredients and not their proportions.

No evidence was offered for the defendant. A motion for a directed verdict of not guilty was denied. The defendant now contends that the evidence presented did not establish his connection with the accident and is insufficient to sustain the verdict. The burden rests upon the People to prove beyond a reasonable doubt not only the commission of the crime charged, but also the commission of the crime by the accused and by no one else. (*People* v. *Hooper,* 364 Ill. 320; *People* v. *Christocakos,* 357 id. 599.) It is true that direct evidence is not necessary, but to warrant a conviction on circumstantial evidence the facts proved must so thoroughly establish the guilt of the person accused as to exclude every reasonable hypothesis of his innocence. (*People* v. *Gregor,* 359 Ill. 402; *People* v. *Christocakos, supra; People* v. *Ahrling,* 279 Ill. 70.) Although this court is committed to the doctrine that the jurors are the judges of the weight of the evidence in criminal cases, yet it will not hesitate to reverse a judgment of conviction resting upon circumstantial evidence that raises little more than a suspicion against the accused, and leaves a grave and serious doubt of his guilt. *People* v. *Oberlin,* 355 Ill. 317; *People* v. *Vehon,* 340 id. 511; *People* v. *Kemming,* 311 id. 50; *People* v. *Rischo,* 262 id. 596.

No direct evidence was adduced to identify defendant with the accident. In order to place him at the scene of the accident, the People rely first upon the conversation of the deputy sheriff with the defendant and his wife. As related by the witness, this conversation disclosed only that defendant's car may have struck something or someone when he was driving west on Washington street. It does not appear, however, that in driving along Washington street he passed over and across Schorie avenue, near which the accident happened, nor, if he did, that it was at the

time of the accident. In short, the conversation, alone, fails to establish the fact beyond a reasonable doubt that defendant's car struck any person, or that he was in the immediate vicinity of the accident. The prosecution relies secondly on the chemical analysis of the paints found on the boy's jacket and the fender. While the analyst, who admitted having had little experience with paints, found one ingredient common to higher priced lacquers in the two samples analyzed, it was not disclosed that the use of such lacquers is so limited as to lead reasonably to the conclusion that the samples were from the same make of car as defendant's, or even from cars within a restricted class in which his car was included. With this exception, he found only components common to lacquers. The witness described both samples as "cream colored," but did not attempt to demonstrate that the colors were identical, rather than different shades or tones subject to the same general description. Conceding his inability, because of the meager coat sample, to discover whether the same formula or more than a few of the same ingredients were used in both samples, the witness stated that he could not say the samples were of the same paint. Finally, it was disclosed on cross-examination that he had made no effort to determine all of the constituents, some of which might well have been different, but first learned from its manufacturer the composition of the fender paint, then endeavored to find the same in the sample from the coat.

The results of the analysis are negative as proof of more than points of mere similarity in the paints and though it lends support to the contention that they were of identical origin, it still is speculative in character.

Inherent in defendant's attack upon the sufficiency of the evidence, though not specifically argued, is the question, whether the People have proved criminal negligence which is the gist of the offense of manslaughter with a motor vehicle. (*People* v. *Herkless,* 361 Ill. 32.) Irrespective

of the question of defendant's connection with the accident, his conviction cannot be sustained in the absence of proof of criminal negligence. Criminal liability does not attach to every act of negligence resulting in injury to another person, but only to negligence of such a reckless or wanton character as to show an utter disregard for the safety of others under circumstances likely to cause an injury. (*People* v. *Oberlin, supra; People* v. *Anderson*, 310 Ill. 389; *People* v. *Adams*, 289 id. 339.) In order to sustain a conviction it became incumbent upon the People to prove two things: First, that the defendant Burgard was guilty beyond a reasonable doubt, and, second, that his conduct in driving his car was such as to convince a jury, beyond a reasonable doubt, that he was guilty of wilful and wanton negligence. From the evidence it appears that Washington avenue did not run through a thickly populated district, and it was not a street on which the travel was of such character as to require a more careful conduct in driving in so far as traffic on the street was concerned. The night was dark and, as the witnesses state, it was impossible to see for any considerable distance. It is true that a driver is required, on a country road, to look out for pedestrians on the highway, and under the circumstances involved in this case it might be said that it was the duty of the driver of a car to be on the lookout for pedestrians. Nevertheless, it can hardly be said from the facts in evidence that the defendant was guilty of wilful and wanton negligence in not discovering the deceased at the time of and just prior to the accident. There is no evidence that the defendant was proceeding at a high and dangerous rate of speed, other than the inference that might be drawn from the description of Clark's evidence that the boy was swished out of his control. The evidence is conflicting as to whether there were lights on the car. Clark testified that he did not see any and the witness Mellish testified that he did see a tail light. There is no evidence that the driver of the car

was intoxicated. The death of the boy was naturally unfortunate. It might be argued that in view of the fact they were opposite the store operated by Mellish, which had previously on Sundays been the recipient of the trade of Clark and Mrs. Markgraf, and was directly across the street from where the accident happened, the boy and Clark may have been proceeding across the street to obtain the necessary cream from this store as they had done before. Where acts or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted. *People* v. *Gregor, supra; People* v. *Oberlin, supra; People* v. *Ahrling, supra.*

In the argument of counsel for the defendant to the jury he stated that it should not send the defendant to the penitentiary because it guessed that the defendant was guilty. In reply, the State's attorney stated to the jury that the judge did not have to send him to the penitentiary, even if he were found guilty, and that the law allowed the judge to grant probation. Objection to this argument was made and sustained, and the court instructed the jury to disregard it. · However, the inference was plain that the jury might assume that the court had the right to grant probation, and that the defendant might not be called upon to serve a penitentiary sentence. While the trial court promptly undertook to cure this objectionable statement, nevertheless, the harm had been done and the jury had information which it necessarily should not consider. Such a statement in the argument of counsel for the People has been condemned by this Court. (*People* v. *Klapperich,* 370 Ill. 588.) This court in its opinion in the case cited, said: "Portions of the State's attorney's closing argument are also objected to in that he discussed the possibility of the defendant being put on probation. Exception was taken and a motion for withdrawal of a juror, because of this improper argument, was made. The motion was denied. The People's answer to this complaint is that defendant's

counsel, in his argument, had made use of the word 'penitentiary,' referring to a verdict which would commit defendant to the penitentiary. Neither counsel had any right to argue the effect of the verdict of the jury in those cases where the jury has nothing to do with fixing the punishment. In such cases, the statutes as to punishment and probation have no relation to the trial of a criminal case. The effect of the argument of the State's attorney may well have influenced the jury in arriving at a verdict of guilty. The argument was error."

From our consideration of the weight of the testimony, as required by law in criminal cases, it is our opinion that the judgment of the circuit court should be reversed.

*Judgment reversed.*