(No. 27358.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSE LYNN, Plaintiff in Error.

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 13, 1944.*

HAROLD F. TRAPP, of Lincoln, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and EDWIN C. MILLS, State's Attorney, of Lincoln, for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Jesse Lynn, was indicted in the circuit court of Logan county for manslaughter. The indictment consisted of six counts. An order of *nolle prosequi* was entered as to the first count. Motions to quash were sustained as to the third and fourth counts, but overruled as to the second, fifth and sixth. There were two jury trials. Upon the first, the jury disagreed. The second trial resulted in a verdict of guilty under the second count. This count charged that as the direct and proximate result of defendant's unlawful, felonious, reckless and negligent act, on March 28, 1941, in permitting a motor truck to stand upon a public highway in the nighttime without lights, an

automobile driven by Floyd M. Sullivan ran into the rear end of the truck, and that Marianne Mills, a child, riding as a passenger in the automobile, was thrown upon the pavement and sustained fatal injuries. Motions for a new trial and in arrest of judgment were overruled, and defendant was sentenced to imprisonment in the penitentiary for an indeterminate period of from one to fourteen years. He prosecutes this writ of error.

From the evidence it appears that about seven-thirty o'clock in the evening of March 28, 1941, characterized by witnesses as a very dark night, the lights on defendant's Diamond T motor truck became extinguished while he was driving south down a hill on State route 66 between Atlanta and Lawndale. The evidence is conflicting as to whether he continued traveling or stopped his truck a short distance after descending the hill. In any event, shortly thereafter, a Ford V-8 Tudor sedan, driven by Floyd M. Sullivan, collided with the rear end of the truck. The right side of the Ford automobile was demolished and the consequent injuries sustained by Marianne Mills, a passenger in Sullivan's car, resulted in her death. At the northern edge of Lawndale, about four miles south of Atlanta, lies Kickapoo creek, spanned by a large concrete bridge. Route 66, a north and south concrete highway, eighteen feet wide, has a center dividing line, painted black. On each side are dirt shoulders, from six to eight feet wide. For a mile northward from the bridge the grade of the road is fairly level, and then rises on an incline for a half mile or less. West of the highway is a fifteen-foot high embankment, with sloping sides, constituting the right of way of the Chicago and Alton Railroad Company. Between the highway and the railroad embankment there is a ditch, described as being from one and one-half to three feet deep, from a point two hundred fifty feet north of the site of the accident to Kickapoo creek. The collision

occurred about one-half mile north of Kickapoo bridge, and midway between the foot of the hill and the village of Lawndale.

Section 145 of division I of the Criminal Code declares: "Involuntary manslaughter shall consist in the killing of a human being without any intent to do so, in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner." (Ill. Rev. Stat. 1943, chap. 38, par. 363.) The unlawful act relied upon here is the alleged violation of section 105 of the Motor Vehicle Law, which provides, in part: "During the period from sunset to sunrise every motorcycle or motor vehicle which is standing on any highway shall display a light on the front and at the rear of the same." (Ill. Rev. Stat. 1943, chap. 95½, par. 202.) The gist of the offense of involuntary manslaughter with a motor vehicle is criminal negligence. (*People* v. *Sikes*, 328 Ill. 64.) Negligence, to become criminal, must be reckless or wanton and of such a character as to show an utter disregard for the safety of others under circumstances likely to cause injury. Every person who drives upon a public highway is under a legal duty to observe, in the control and management of his vehicle, the exercise of reasonable care to prevent injury to others. (*People* v. *Herkless*, 361 Ill. 32.) Where a person drives his automobile in a manner that shows wanton negligence and an utter disregard for the safety of others, and in so doing runs over and kills another, even though unintentionally, his action constitutes manslaughter. (*People* v. *Hansen*, 378 Ill. 491.) The verdict of the jury finding defendant guilty under the second count, only, was equivalent to an acquittal of the charges of involuntary manslaughter arising out of the reckless conduct of defendant in driving his truck without lights and driving a truck while intoxicated, embraced in the fifth and sixth counts, respectively, of the indictment. (*People* v. *Smithka*, 356 Ill. 624.)

The decisive question presented is, therefore, whether, under the evidence, defendant was proved guilty, beyond a reasonable doubt, of manslaughter because of the death of Marianne Mills in the collision between Sullivan's car and defendant's standing truck.

Sullivan, together with his family and Marianne Mills, a neighbor, were returning to Lincoln, where he resided, from McLean, a village about twenty miles north. They left McLean shortly after 7:00 P. M. The child was seated in the rear seat on the right-hand side. Sullivan testified that as he drove south down the hill, between Atlanta and Lawndale, he reduced his speed from fifty to forty miles per hour; that, upon raising his headlights after having lowered them to permit a northbound automobile to pass, he discovered a truck, without lights, standing upon the highway, and that he applied his brakes, swerved sharply to the left, but not in time to avoid striking the left rear end of the truck. Sullivan added that shortly after the collision he observed a man, whose face he was unable to see, leaving the scene, running toward the railroad embankment.

Louis J. Rechner testified that as he was driving south in the west traffic lane between Atlanta and Lawndale, at the foot of the hill, he passed an automobile, also going south, and that shortly thereafter he first observed a red reflector on the rear of defendant's truck, about four hundred feet ahead of him; that the truck, traveling about fifteen miles per hour, was being driven half upon the shoulder and half on the slab; that he applied his brakes, drove his car off the slab and traveled behind the truck for a distance of seventy-five to one hundred feet, at one time being less than ten feet from it; that when he drove around the truck, about fifteen hundred feet south of the foot of the hill, its driver was seated on the left side, at the wheel; that upon observing the truck ahead of him, he "fanned" his brakes, by applying his foot to the pedal,—causing his

rear lights to flash off and on,—to warn the driver of the car behind of the presence of a hazard in the road ahead, and that the reflection of the headlights of the car, about fifty feet behind, was visible through his rear-vision mirror.

The court, over the objection of the defendant, permitted to be read in evidence a transcript of the testimony, given at the first trial, of Leonard W. Huelsmann, a Greyhound bus driver, who observed the collision and administered first aid to the injured. Huelsmann died prior to the second trial. Upon the first trial, he testified that he was driving his bus from Springfield to Chicago; that upon crossing the bridge at Lawndale he noticed an oncoming passenger car; that its driver and he both dimmed their lights; that simultaneously he noticed a truck standing on the highway, the right front wheel being off the slab onto the shoulder; that the driver of the oncoming car attempted, unsuccessfully, to swerve around the truck; that the right side of the automobile struck the left rear end of the truck, and that he stopped his bus approximately twelve feet from the car. Huelsmann further testified that after the impact the truck was moved forward about twenty-five feet into the ditch; that there were no lights on the truck; that the light switch was pulled out in a position indicating the lights had been turned on, and that the gears of the truck were in neutral. Huelsmann also testified that prior to the collision a man was standing on the pavement, close to the truck, facing its cab, and that later he saw a man ascending the railroad embankment.

Six witnesses testifying on behalf of the People expressed the opinion that defendant was intoxicated during the afternoon of the day of the accident. There was also evidence that about 5:30 P. M. defendant, in driving his truck through a covered driveway of a filling station, struck one of the supporting posts or columns of the canopy, dislodging it from its base and also dislodging a gasoline pump located next to the post, and that when the damage

was called to his attention he merely drove away. Several witnesses testified in defendant's behalf that he was not intoxicated in the afternoon. Although defendant admits that he consumed three bottles of beer during the afternoon preceding the accident, he, nevertheless, insists upon his sobriety.

Edward J. Warrick, a service man who brought the truck into Lincoln from the scene of the accident, testified he found the truck off the road, its front end in the ditch, a tow truck being required to remove it; that he examined the starter and found the truck in gear, and that there was no response when he pulled the switch to turn on the lights.

Glen Wright, his wife Dorothy, and a friend, Marian Swearingen, testified that as they were driving north from Lincoln to Atlanta in the east traffic lane, and at a point about half way up the hill, they passed a truck traveling south on the west side of the black line. Each testified to observing the lights of the truck flickering—going on and off,—and Dorothy Wright and Marian Swearingen testified that upon looking to the rear before reaching the top of the hill they noticed the lights on the truck were extinguished. Wright and his wife testified that upon returning south from Atlanta, a short time later, they saw the truck in the ditch.

The evidence discloses that about four months prior to the accident, front and rear light bulbs were installed on the Diamond T truck, the brakes and alignment checked, and a safety sticker issued to defendant by a garage in Lincoln attesting the truck was qualified for operation under the applicable law, (Ill. Rev. Stat. 1943, chap. 95½, par. 220;) and that although subsequently the truck was not driven at night, on several occasions after dark its lights were turned on in the garage and were in good working order. On the day of the occurrence, defendant had visited his brother, in McLean. The collision occurred on the trip

returning to Lincoln, where he resided. Defendant testified that he left McLean about 7:00 P. M.; that before reaching Atlanta he turned on the truck lights; that they operated successfully, but that the headlights soon commenced to flicker and became extinguished altogether as he was proceeding down the hill between Atlanta and Lawndale. According to his testimony, he drove the truck over to the side of the road so that one-half of it was on the concrete slab and the other half on the shoulder, proceeding in this manner along the highway to the point where the accident happened, intending to stop at Lawndale to repair his lights, and that his failure to drive the truck entirely off the slab was because of his fear of running into the ditch. Defendant further testified that immediately prior to the accident, at a time when the Greyhound bus was 2000 feet to the south, he observed, through his rear-vision mirror, a driver flashing his automobile headlights off and on, and that this car followed behind the truck a distance of two hundred feet, when it rapidly passed him; that another car, headed north, also passed him, after which he observed the dimmed lights of the automobile which collided with the truck, between 250 and 300 feet behind him; that the driver of this car gave no signal or warning indicating an intention to pass; that the impact of the Ford car as it struck the truck threw him out of the door onto the pavement; that he was stunned by the fall, and remembered nothing after the collision; that the truck was in gear at the time, running on the shoulder, and that the impact forced it into the ditch. He next recollected being pick up at the bridge shortly after the accident by unknown occupants of an automobile, who, at his request, took him to Lincoln, where Joseph Gregor, an acquaintance, telephoned and took him to the office of Dr. A. M. Drummy. The latter, called as a witness for the People, testified that defendant was at his office about 8:45 P. M.; that he immediately went with

him to a hospital, where he caused defendant's elbow and hand to be X-rayed, and dressed his two injured fingers; that a bone in defendant's thumb was broken; that he had a dislocated little finger and abrasions on two other fingers and on his right elbow. Both Gregor and Dr. Drummy testified there was no evidence of the use, or that defendant was under the influence, of intoxicating liquor.

The sole contention requiring consideration is whether the evidence establishes defendant's guilt beyond a reasonable doubt. Criminal liability does not attach to every act of negligence resulting in injury to another person, but only to negligence of such reckless or wanton character as to exhibit an utter disregard for the safety of others under circumstances likely to cause an injury. (*People* v. *Burgard,* 377 Ill. 322; *People* v. *Schneider,* 360 Ill. 43; *People* v. *Oberlin,* 355 Ill. 317.) A violation of a statute may be conceded, in that no lights were visible on or near the truck at nighttime, but not every violation of a statute constitutes criminal negligence, as not all such negligence is reckless or wanton and of such character as shows an utter disregard for the safety of others. (*People* v. *Przybyl,* 365 Ill. 515.) Moreover, liability arising out of mechanical failure of motor vehicles or appurtenances is not necessarily conclusive of negligence, criminal or otherwise, where the failure occurred under circumstances beyond one's control. (*Toledo, Wabash and Western Railway Co.* v. *Beggs,* 85 Ill. 80; *Austin* v. *State of Florida,* 101 Fla. 990; *Berkovitz* v. *American River Gravel Co.* 191 Cal. 195.) Where acts or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted. *People* v. *Burgard,* 377 Ill. 322.

From a careful consideration of all the evidence, the conclusion is inescapable that the proximate cause of the collision was the mechanical failure of the lights on defendant's truck. Uncontroverted testimony discloses an

inspection of the truck about four months prior to the accident, the installation of new bulbs in front and rear lamps, and a safety sticker issued by a garage owner in Lincoln indicating the truck was qualified to operate under the laws of this State. Subsequent tests, made in the garage at nighttime, demonstrated the lights were in good order. Their extinguishment as defendant drove down the hill, under the evidence, cannot fairly be charged to negligence on his part. That his lights did flicker and become extinguished is sufficiently corroborated by Glen and Dorothy Wright and Marian Swearingen, also by Huelsmann and Warrick, the witnesses last named both having tested the switch after the accident. The evidence relating to the conduct of defendant, immediately prior to and at the time of the occurrence, shows that when the lights of his truck became extinguished he endeavored, apparently to the best of his ability, to drive his truck as far over to the right as possible, straddling the west edge of the concrete slab, and that the truck was not driven entirely off the pavement only because of his fear of the ditch. As recounted, the night was very dark, and although a violation of the statute, because of lack of lights, may be conceded, when the attending circumstances are taken into consideration it cannot be said that the criminal negligence required to establish the involuntary manslaughter charged has been proved.

The same conclusion was reached in *Austin* v. *State of Florida*, 101 Fla. 990, also involving a conviction of manslaughter for the death of a child, a passenger in an automobile which collided with an unlighted truck and trailer stalled on a public highway owing to light and motor trouble. In reversing the judgment of conviction, the court pertinently observed: "Whether or not the driver of the automobile in which the child was a passenger was guilty of negligence is immaterial in this case. [Citation.] If the accused had been guilty of that degree of negligence

which would cause him to be criminally liable for the death of the child, the fact that another party was also guilty of criminal negligence in connection with the unfortunate occurrence would not relieve the accused from such criminal liability. However, we do not think that criminal liability attaches where circumstances and conditions beyond the control of the accused caused him against his will to be in position and under the conditions which resulted in the unfortunate death of the child."

The evidence is insufficient to remove all reasonable doubt of defendant's guilt of involuntary manslaughter, as charged by the second count of the indictment, and to create an abiding conviction that he is guilty. A remandment for a new trial would serve no useful purpose.

The judgment of the circuit court of Logan county is reversed. *Judgment reversed.*