(No. 12734.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in
Error, vs. SAMUEL ADAMS, Plaintiff in Error.

*Opinion filed October 27, 1919.*

1. CRIMINAL LAW—*witnesses should testify to actual facts to
prove criminal negligence.* On the trial of an automobile driver
for criminal negligence the witnesses should testify to the actual
facts, and they should not be permitted to give conclusions as to
what could or could not have been done with safety under the
circumstances.

2. SAME—*intent to kill is not necessary in manslaughter.* As
manslaughter is defined by statute to be the unlawful killing of a
human being without malice, express or implied, and without any
mixture of deliberation whatever, the intent to kill, or malice, is
not a necessary ingredient in the crime.

3. SAME—*indictment for manslaughter may charge willful neg-
ligence.* An indictment charging involuntary manslaughter is not
objectionable because it alleges the defendant unlawfully, feloni-
ously and willfully did the act that caused the death.

4. SAME—*question of criminal negligence is one of fact for the
jury.* Where the driver of an automobile is charged with man-
slaughter in the killing of a pedestrian, whether the defendant is
guilty of culpable or criminal negligence is a question of fact for
the jury to pass upon under instructions free from error or mis-
leading statements as to the law.

5. SAME—*driver upon public highway must exercise reasonable
care to prevent injury.* Every person who drives upon the public
highway is under a legal duty to observe, in the control and man-
agement of his vehicle, the exercise of reasonable care to prevent
injury to others.

6. SAME—*when negligence becomes criminal.* Criminal liabil-
ity cannot be predicated upon every lawful act carelessly performed
merely because such carelessness results in the death of someone,
but negligence, to become criminal, must be reckless or wanton
and of such a character as shows an utter disregard of the safety
of others under circumstances likely to cause injury.

7. SAME—*what is improper in State's attorney's argument in
the trial of driver of motor vehicle.* On the trial of the driver of
a motor vehicle for criminal negligence the State's attorney in his
argument should not direct the jury to consider what they have

read in newspapers concerning the recklessness of chauffeurs in general and their own observations as to the negligence of chauffeurs who drive machines for hire, as the defendant should be tried on his own conduct as determined by the evidence.

8. SAME—*when record should recite that it contains all the instructions given or evidence heard.* The refusal to give certain instructions cannot be considered as a matter affecting the judgment where the abstract does not show the instructions therein shown to be given are all the instructions that were given on the trial; nor can the question whether the evidence in the record is sufficient to support the judgment arise where the record does not recite that the evidence as disclosed by the abstract is all the evidence that was heard on the trial.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HENRY GUERIN, Judge, presiding.

FRANK R. REID, and CHARLES A. O'CONNOR, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county upon the third count of an indictment charging him with manslaughter. The jury in their verdict recommended the minimum penalty. Motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced on the verdict. He has sued out this writ of error to reverse the judgment.

The indictment charged plaintiff in error with having killed Helen O'Connell on December 2, 1917, in the county of Cook and State of Illinois. The first count charged manslaughter in the ordinary form, with an automobile as the instrument. The second count charged the killing by the operation of the automobile at a dangerous and exces-

sive rate of speed. Those counts are eliminated by the find-
ing of the defendant guilty by the jury under the third
count. That count charged, in substance, that plaintiff in
error was driving an automobile on Twelfth street, in the
city of Chicago, at a place where he knew it was the habit
and custom of large numbers of persons to be upon the
street, and at a place where it was his duty to drive said
automobile with care and caution and to observe and as-
certain whether persons on foot were then and there on or
crossing the street in front of his automobile; that plain-
tiff in error, in violation of his duty, unlawfully, willfully,
negligently and feloniously and with culpable negligence
drove the automobile without watching and observing to
ascertain whether persons on foot were then and there cross-
ing the street in front of the automobile, and by reason
thereof did then and there unlawfully, willfully, feloniously
and with culpable negligence drive the automobile upon
Helen O'Connell as she was upon or crossing the street
on foot, knocking her to the pavement, and then and
there drove the automobile over her body, inflicting on her
wounds and bruises from which she died.

Plaintiff in error was twenty-nine years old at the time
of the killing and was running a garage at 1524 Taylor
street, Chicago. He was the owner of the closed limousine
driven by him on said day, in which he was conveying pas-
sengers between 2:00 and 2:30 o'clock P. M. eastward on
Twelfth street. He stopped his car at the west line of
Ashland boulevard where it crosses Twelfth street. On the
west side of Ashland boulevard Twelfth street is very much
wider than it is on the east side of Ashland boulevard. The
street car tracks on Twelfth street west of Ashland boule-
vard are near the north and south curbs, and vehicle traffic
there runs between the east-bound street car track on the
south side and the west-bound track on the north side. As
the car tracks approach the center of Ashland boulevard
they both curve abruptly toward the center of the cross-

ing, so that when they have reached the east line of Ashland boulevard they are in the center of Twelfth street, and vehicle traffic there is confined to the space on the north and south sides of the street between the double tracks and the curb lines, the east-bound vehicle traffic being confined to the south side of the street and the west-bound vehicle traffic to the north side. A double street car line occupies the center of Ashland boulevard, and the south-bound vehicle traffic uses the west side of the boulevard and the north-bound traffic the east side. After stopping his automobile on the west side of Ashland boulevard plaintiff in error started to drive across the street car track to the east side of the boulevard and the south side of Twelfth street. A street car came from the west from behind him and was curving in front of him to the center of the crossing. The account given of the killing from this point by plaintiff in error is, in substance, the following: He started his machine at a speed between six and eight miles an hour to cross the east-bound Twelfth street track to the east side of Ashland boulevard. When he reached the track the street car going east on Twelfth street cut him off by running in front of him. He couldn't go further east. If he stopped, the street car would cut him on the side of his machine. If he went further forward it would jam him and he would spill some people. If he stopped, his automobile "would slide over" and the street car would knock his machine over sidewise. If he went forward the street car would run into him. So he turned north toward the north side of the street to go on Ashland boulevard. When he came to Ashland boulevard he saw a couple of machines coming toward him from the north. To save himself he speeded up his car up the north side of Twelfth street after crossing Ashland boulevard, with a view to pass the street car and cross in front of it on Twelfth street and regain the south side of the Twelfth street car tracks, where he belonged as a traveler on that street. When he cut in front

of the street car, going southeasterly, there was screaming and he saw something happen and got sick and fell down. He didn't know what happened at that time and came to a stop against the south curb of Twelfth street. He claims that his speed was twelve or fourteen miles an hour as he was passing in front of the street car, but states that his front axle was bent by striking the curb, which is a point from fifty to sixty feet away from the point where he crossed in front of the street car. Witnesses for the State testified that his speed was from fifteen to twenty-five miles an hour.

It does not definitely appear whether the deceased was, at the moment she was struck by the machine, moving from the south side of Twelfth street in front of the street car to the north side of Twelfth street with a view of taking a street car west-bound on Twelfth street, or whether she had already gotten to the point where west-bound cars are taken. It does definitely appear, from the physical facts, that she was struck by the automobile on the north side of the Twelfth street car track, because the automobile was headed southeast when it struck the woman and her small son, who was with her. The boy was driven onto the east-bound track in front of the street car, which stopped within a foot of the boy while he was lying on the track. The woman's body was driven close to the east-bound car on its blind or north side, and her body was lying on that side of the car, just east of the front wheels. There was a stipulation in the record or an admission by the plaintiff in error that the woman had left her home and was going to visit her neighbor, "and that she was about to take a west-bound car, as soon as one arrived, to go to her destination." This would indicate that she was at the place where such a car could be taken, from thirty to fifty feet east of the east line of Ashland boulevard and on the north side of the east-bound track. The conductor of the street car testified positively that people had been pass-

ing in front of him, going north, just before the woman was hit, but that he did not see the woman and the boy until the boy was thrown on the track in front of his car.

We do not desire to discuss the merits of the case further than to say that plaintiff in error's own testimony can not be clear or satisfactory because of the fact that he testified to conclusions rather than to the actual facts, and his positions at various times cannot be located from his testimony in the record because he testified to them by pointing to a chart which is not in evidence. He testified to no facts showing why he could not have stopped on the north side of Twelfth street,—at least after he passed Ashland boulevard,—and let the street car pass on and cross in the rear of it instead of in front of it. Had the witnesses been confined to the actual facts, instead of testifying to conclusions as to what he could or could not have done with safety, the merits of the case would readily appear in evidence. On another trial this should be done.

Plaintiff in error makes the claim that the indictment is insufficient (1) because it contains allegations of willful and culpable negligence; and (2) because it fails to set out facts charging the crime of manslaughter. Manslaughter is defined by our statute to be the unlawful killing of a human being without malice, express or implied, and without any mixture of deliberation whatever. The intent to kill, or malice, is not a necessary ingredient at all in manslaughter. While it is not necessary to charge malice or intent, yet it is well known that a party charged with murder may be convicted of manslaughter under such a charge, for the sensible reason that the charge of manslaughter is necessarily included in the charge of murder. It is common in Illinois for indictments for manslaughter to charge that the defendant unlawfully, feloniously and willfully did the thing or the act that caused the death of the deceased. Under the law in this State the objection to this indictment cannot be sustained, and the court did

not err in overruling the motion in arrest of judgment. The second objection to the indictment is altogether untenable.

Involuntary manslaughter, as defined in our statute, consists in the killing of a human being without any intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner. It is difficult to see how the offense could be more clearly defined, and the distinction between murder and manslaughter is as clearly made by our statute as it can be in words. Involuntary manslaughter is charged in this case, and the negligent act charged is the driving of the automobile against the deceased by reason of plaintiff in error's culpable negligence in failing to keep a proper lookout for people at that point, where he knew they were customarily to be found congregated. In fact, plaintiff in error stated that he knew that people took the west-bound car on Twelfth street at about the point where he struck the deceased, and at the time that he struck her he was partly on the west-bound street car track and partly on the street with his automobile. The real question in the case is whether he was guilty of culpable or criminal negligence. That was a question of fact for the jury, and they should have been directed to pass upon that fact under instructions free from error or misleading statements as to the law. The fourth instruction for the People given by the court directs the jury, in substance, that every person who drives upon the public highway is under a legal duty to observe, in the control and management of his vehicle, the exercise of reasonable care to prevent injury to others. This is the law, but the instruction goes farther and states that every person is criminally responsible for the neglect or willful failure to perform that duty. It is not the law that a person is criminally responsible for every act of mere negligence that causes the death of another. Negligence, to be criminal, must be gross or wanton negligence. Gross negligence is neg-

ligence that borders onto recklessness, and wanton negligence, as applied to the running of motors and vehicles, implies a positive disregard of the rules of diligence and a reckless heedlessness of consequences, according to Babbitt in his work on motor vehicles, section 1517. Ordinary negligence merely denotes a negative quality in a person in attending or discharging a duty. Criminal liability cannot be predicated upon every lawful act carelessly performed, merely because such carelessness results in the death of someone. Negligence, to become criminal, must necessarily be reckless or wanton and of such a character as shows an utter disregard of the safety of others under circumstances likely to cause injury. *People* v. *Falkovitch,* 280 Ill. 321.

The State's attorney also made prejudicial remarks to the jury, wherein he stated, in substance, that they should consider what they had read in the newspapers concerning the recklessness of chauffeurs in general, and also consider what had been their own observations of chauffeurs who drive machines for hire, as to whether or not they were negligent or careful. The jury were not warranted in considering what newspapers may have said or their own observations of chauffeurs in general in deciding the guilt or innocence of the plaintiff in error. There is no principle in the law more strictly adhered to in this class of cases than that a defendant should be tried on his own conduct as determined by the evidence itself.

The complaint that the court refused to give certain instructions for plaintiff in error cannot be considered as a matter affecting the validity of the court's judgment, as the abstract does not show that the instructions given for the People and for plaintiff in error are all the instructions that were given on the trial. And for the same reason the question could not arise in this case as to whether or not there is sufficient evidence in the record to support the judgment, as the record does not recite that the evi-

dence therein found is all the evidence that was heard on the trial, as disclosed by the abstract. We may say in conclusion, however, without special comment, that defendant's refused instructions numbered 10, 7, 6, 5, 4 and 3 were properly refused by the court. Some of them were mere abstract propositions of law that gave the jury no aid in deciding the case, while others were very improper because they invaded the province of the jury. Instruction No. 11, marked refused, might properly have been given.

For the errors above noted the judgment of the criminal court is reversed and the cause is remanded.

*Reversed and remanded.*