THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ BARRIO FAJARDO, Defendant and Appellant.

No. 8499. Argued January 28, 1941.—Decided January 31, 1941.

*Amador Ramírez Silva* for appellant. *George A. Malcolm, Attorney General,* and *R. A. Gómez, Prosecuting Attorney,* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

On July 14, 1939, at about 4 p.m., the defendant-appellant was driving a motor bus over a vicinal road which leads from San Francisco Cane Colony to Insular Highway No. 78, Km. 0, Hm. 3. Upon coming out of said vicinal road and entering the highway, the bus driven by the defendant collided with a motorcycle operated by Luis Ramos Noriega, an Insular policeman, who suffered the fracture of a leg and other injuries.

A criminal complaint was filed against the driver of the bus, appellant herein, for a violation of section 328 of the Penal Code, and it was charged that at the time and place of the accident, he operated said vehicle "without due care or circumspection and by reason of his carelessness and negligence he caused said vehicle to collide with the motorcycle," and that "the lack of care and circumspection, carelessness, and negligence consist in that the defendant herein, José Barrio Fajardo, while driving said bus, then and there, upon turning into Highway No. 78 from the road which leads to the San Francisco Colony, failed to reduce the speed of said vehicle or to give warning with the horn, claxon, or other similar apparatus used for that purpose, thereby causing the accident."

The present appeal, taken by the defendant from a judgment whereby he was sentenced to pay a fine of $100 or to a term of three months in jail, is based on two assignments of error, the first of which relates to the admission of a certain question, and the second, to the weighing of the evidence.

After Angel Ortiz, a witness for the prosecution, had testified that at the time of the accident he was near the highway; that he heard a clash, saw the motorcycle lying on top of the policeman, and helped to pick up the injured man; and that he also saw the bus coming out of the lane into the highway, his examination continued thus:

"Q. Did the bus reduce the speed when turning into the highway?

"A. If you want me to tell you, he was not coming out fast, but I did not notice about the claxon.

"Q. Do you know whether that bus sounded any claxon or horn?

"A. Yes, sir.

"Q. Look at the signature in this statement, whose signature is it?

"A. It is mine.

"Q. Try and see whether you remember having stated in that testimony which you gave before the Justice of the Peace of Hormigueros on the same day of the occurrence, 'that when the bus came out from there it did not reduce the speed nor sound a claxon.'

"Attorney Ramírez Silva: I am going to object to that question, Your Honor, because a foundation will have to be laid first.

"Judge: The court allows the question.

"Attorney Ramírez Silva: We take an exception on the same grounds.

"Q. Did you or did you not testify that in Hormigueros?

"A. I saw that the bus came out and immediately collided with the motorcycle.

"Q. But at what speed was it coming?

"A. I did not see at what speed it was coming; I could not tell.

"Judge. But look here, witness, can you not ascertain whether it was coming at great or little speed, whether, it was coming slow or fast at regular speed or at great speed?

"A. It is for that reason that I can not tell . . . .

"Q. Well, did the driver of the bus sound a horn or not?

"A. No, sir, I could not tell.

"Q. Did you not testify before Mr. Cesáreo A. Rodríguez, Justice of the Peace of Hormigueros, on July 14th of last year, that is, on the same day when the facts occurred, 'that when the bus went upon the highway it did not reduce the speed or sound a claxon'?

"A. Well, I testified before the justice of the peace, yes, sir.

"Q. Did you or did you not testify that?

"A. Yes, sir.

"Q. What happened there when the bus came out upon the highway?

"A. When the bus went out upon the highway I was coming out of my house and then I saw a policeman riding on a motorcycle and the bus collided with him.

"Q. At what distance were you then?

"A. At about six meters.

"Q. What did the driver of the bus do when he collided with the motorcycle.

"A. He collided and remained there.

"Q. Did you not testify before the Justice of the Peace of Hormigueros that he had fled?

"A. I think he remained there, I am not sure.

"Judge: Now he does not seem to know whether he remained there.

"Q. Can you not tell whether or not he remained there?

"A. No, sir.

"No further questions. (Addressing the marshal). This witness should not go away."

The contention of the appellant to the effect that in attempting to impeach said witness the district attorney did not comply with the provisions of section 521 of the Code of Civil Procedure, (section 159 of the Law of Evidence) is groundless. As prior statements made by the witness in writing, over his signature, were involved, the district attorney need only show to the witness his statements "before any question was put to him concerning them." We fail to find that any error was committed in admitting the foregoing examination.

It is charged that the lower court erroneously weighed the evidence. Let us examine the same.

The first witness who testified was Luis Ramos Noriega, the injured policeman, and he stated: "That on the day of the accident he was coming on his motorcycle from San Germán towards Hormigueros; that on reaching the San Francisco lane, the defendant came out upon the highway with the bus which he was driving; that he came out quite fast and failed to sound the claxon; that the speed was quite excessive; that for this reason the defendant got in the way, collided with him, and then fled; that he was coming on his motorcycle taking every precaution and going on his right; that the

defendant was coming on his right, but on reaching the highway he turned to the left in the direction of San Germán.

Santos Rosa, a resident of Hormigueros, testified that at the time of the occurrence he was on the highway in front of San Francisco Colony, that he saw the bus coming out from said colony towards the highway and that it struck the motorcycle from behind; that the bus "was not coming fast because the turn was very hard for him." Asked whether the defendant on turning into the highway sounded the claxon or horn, he answered: "I heard something like a whistle, when the motorcycle was coming and the bus was turning into the highway." He went on to testify that he could not estimate the speed in which the one or the other was coming; that when the defendant saw the policeman fall, he went on in the bus without giving him any assistance, and that he could not tell whose whistle was it the one he heard.

The next witness was Angel Ortiz, whose testimony we have already analyzed in discussing the first assignment. He stated that the road along which the defendant was coming was a pitted roadway made of earth and stone.

José Marchany Vélez testified that he lives near the place where the collision occurred; that while standing in front of his house, he saw the bus coming out of the lane and when going upon the highway it met the motorcycle and collided with it, the policeman falling to the ground; that the bus "came out slowly, as I heard a whistle, and when it came out thus the policeman was already underneath the motorcycle; and that the driver of the bus fled."

José Serra Rivera stated that he witnessed the collision between the bus and the motorcycle; that the defendant driving the bus was coming out of the lane towards the highway on which the witness was traveling, and as he turned into the highroad a policeman was coming on a motorcycle at the same time and he collided with the policeman throwing him to the ground; that the bus was traveling at regular

speed, going slowly. Upon being asked by the district attorney whether he remembered having testified before the justice of the peace "that the bus on reaching the highway did not reduce the speed," he answered: "Well, yes, but it was not coming very fast." Lastly, he testified that he did not hear the bus sound a claxon.

After a motion for nonsuit based on the insufficiency of the evidence as to the criminal negligence had been denied, the defendant introduced the testimony of Sargeant Busquets to prove that, shortly after the accident, the defendant had voluntarily appeared at police headquarters in order to report the occurrence.

It seems advisable to state that even though the district attorney attempted to impeach the testimony of his two witnesses, Angel Ortiz and José Serra Rivera, by questioning them as to the testimony given by the one and the other before the justice of the peace, the impeachment of the latter was not successful, for although he admitted having testified previously "that the bus on reaching the highway did not reduce the speed," he explained what he meant to say and stated: "Well, yes, but it was not coming very fast."

In order that a judgment of conviction on a charge of violating section 328 of the Penal Code may be sustained it is necessary that the evidence for the prosecution should show that the defendant operated his vehicle with a degree of negligence or carelessness greater than that which is required to obtain compensation for damages in a civil action. In *People* v. *Rodríguez*, 47 P.R.R. 565, this Supreme Court adopted as applicable to this kind of prosecutions the doctrine laid down in the case of *People* v. *Adams*, 124 N.E. 575, in which the Supreme Court of Illinois said:

" . . . . Negligence, to be criminal, must be gross or wanton negligence. Gross negligence is negligence that borders on recklessness, and wanton negligence, as applied to the running of motors and vehicles, implies a positive disregard of the rules of diligence and a

reckless heedlessness of consequences, according to Babbitt in his work on Motor Vehicles, section 1517 . . . Criminal liability cannot be predicated upon every lawful act carelessly performed, merely because such carelessness results in the death of some one. Negligence, to become criminal, must necessarily be reckless or wanton and of such a character as shows an utter disregard of the safety of others under circumstances likely to cause injury." (Citations).

Upon examining and weighing the evidence introduced in this case as a whole, and taking into account the special circumstances surrounding the events that took place, the same is found in our judgment to be insufficient to carry into the mind of the judge the firm conviction that the defendant-appellant was criminally negligent in the operation of the bus. The lower court committed manifest error in determining the scope of the evidence and, therefore, the judgment must be reversed.