EL PUEBLO DE PUERTO RICO, demandante y apelado, v. JOSÉ ANTONIO ROMÁN SEDA, acusado y apelante.

Núm. 11,631.—*Sometido:* Noviembre 8, 1946. *Resuelto:* Febrero 6, 1947.

*Mariano Acosta Velarde, Daniel Pellón Lafuente* y *Fernando For-
naris Jr.*, abogados del apelante; *Hon. Procurador General In-
terino, Luis Negrón Fernández* y *Joaquín Correa Suárez, Fiscal
Auxiliar del Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tri-
bunal.

El apelante fué convicto por un jurado de infracción
al art. 328 del Código Penal de Puerto Rico (*felony*) y sen-
tenciado a cumplir tres años de presidio. Señala varios
errores, refiriéndose el primero a la insuficiencia de la acu-
sación. El defecto de que adolece ésta, según el apelante,
consiste en que, no siguiéndose las palabras del estatuto, las
que se usaron no imputan la negligencia crasa que contem-
pla el art. 328 del Código Penal.([1]) Examinemos la parte
pertinente de la acusación:

". . . en ocasión en que [el acusado] manejaba como conductor,
encargado de los movimientos y dirección de la máquina que tiraba
del tren correo núm. 3. . . mientras viajaba. . . en dirección de Isabela
a Aguadilla, ilegal y voluntariamente, sin guardar la debida pru-
dencia, cuidado y circunspección, al llegar a la pendiente en el sitio
denominado "Cuesta Vieja", con la cual estaba familiarizado. . .
no redujo como era su deber la velocidad de la máquina que manejaba
entrando a dicha pendiente *a velocidad exagerada y rehusando redu-
cir la velocidad de la máquina y por negligencia temeraria y descuido,
condujo* dicha máquina con el tren que arrastraba a una velocidad
exagerada por la referida pendiente sin *tener en cuenta las curvas e
inclinación de la misma,* ni tomando tampoco las debidas precaucio-
nes para garantizar la seguridad de vidas y propiedades, dando lugar
a que la referida máquina, al salir de una curva y entrar a una con-

---

([1]) El art. 328 del Código Penal, en lo pertinente, prescribe:
"Todo conductor, maquinista, . . . u otra persona encargada del todo o
en parte de cualquier vagón, . . . automóvil . . . , que, por imprudencia te-
meraria (*gross negligence*) o descuido, lo dejase o hiciese chocar con otro vagón,
locomotora, . . . o cualquiera otro objeto o cosa, ocasionando de este modo la
muerte de una persona, incurrirá en pena de presidio por un término máximo
de cinco años.
"Si como consecuencia del choque resultase daño para alguna persona,
dicho conductor . . . incurrirá en pena de cárcel por un término máximo de
dos años, o multa máxima de mil dólares, o en ambas penas a discreción de la
corte".

tra-curva, se saliera de los rieles, yendo a chocar contra una pared, un árbol y una casa, como consecuencia del cual choque ocasionó la muerte a . . . quienes viajaban en el mencionado tren.'' (Bastardillas nuestras.)

Se observará que en la acusación se imputa al acusado, que al entrar en la pendiente, con la cual estaba familiarizado, lo hizo a velocidad exagerada, rehusando reducir la velocidad de la locomotora y que actuó con negligencia temeraria (*gross negligence*) al conducir dicha locomotora por la referida pendiente a una velocidad exagerada sin tener en cuenta sus curvas e inclinaciones. A nuestro juicio, la acusación no sólo imputó al acusado que había actuado con negligencia temeraria y descuido, sino que indicó en qué consistió su negligencia.

Se arguye por el apelante que no existe ley alguna en Puerto Rico que fije la velocidad máxima a que pueden correr los trenes en la zona rural. Es verdad que no existe tal precepto legal, pero la seguridad de los pasajeros que conducen y el deber de no hacer daño a otros por descuido o negligencia, exigen de los que conducen los trenes que su velocidad se reduzca hasta donde fuere prudente, de acuerdo con las circunstancias. Como se dijo en *Pueblo* v. *Rodríguez*, 47 D.P.R. 600, 609:

''. . . la falta de una ley que limite la velocidad de los trenes en campo abierto al aproximarse a un cruce, no autoriza que en el desarrollo de esa velocidad se actúe de una manera negligente y descuidada, con menosprecio de la vida y la seguridad de las personas. . ., cuando las circunstancias aconsejen la reducción de la velocidad''.

Una velocidad determinada, que puede considerarse prudente y moderada mientras el tren marcha por un sitio que no ofrece peligro, puede convertirse en imprudente y exagerada cuando el tren, con varios coches de pasajeros y vagones cargados, desciende por la ''Cuesta Vieja'' de Aguadilla, donde la pendiente es fuerte y existen varias curvas y contracurvas.

■ Siendo suficiente la acusación, pasemos a considerar el segundo de los errores señalados, al efecto de que el veredicto es contrario a la prueba.

El testigo de cargo *Eleuterio Rodríguez* declaró que el acusado es un maquinista de experiencia, quien estaba familiarizado con la "Cuesta Vieja" de Aguadilla; que el día de autos el tren núm. 3 iba de San Juan para Ponce actuando el testigo como maquinista; que al llegar al desvío Cortés, entre Isabela y Aguadilla, entregó la máquina al acusado y que entonces estaba en perfectas condiciones. A preguntas de la defensa este testigo admitió que una máquina que ha estado en buenas condiciones puede súbitamente dañarse su mecanismo, especialmente el de los frenos. Declaró, además, que una vez falla la bomba de aire, cualquier esfuerzo que haga el maquinista para controlar la velocidad de la máquina resultará inútil porque ésta trae detrás un tren que la viene empujando e imprimiéndole constantemente más velocidad. Relató que manejando el testigo una locomotora por la "Cuesta Vieja" de Aguadilla, súbitamente se paró la bomba de aire, no logrando detener el tren hasta que llegó a la Central Coloso. Refiriéndose al caso de autos aseguró que si al salir del desvío Jiménez se rompe la bomba de aire, puede hacerse diligencia para reducir la velocidad, pero si el el tren viene ya bajando la pendiente, es difícil controlarlo.

Otro testigo de cargo, *José Alfonso Hernández,* declaró que había sido conductor de trenes; que tomó el tren en calidad de pasajero en Camuy, entre una y una y treinta de la mañana; que durante todo el tiempo el tren había venido corriendo a una velocidad regular; que en el desvío Cortés hubo un cruce de trenes y que al salir de dicho desvío el tren núm. 3 "venía un poco más ligero porque seguramente ese es un sitio de recta, no hay pendiente allí"; que después de pasar el desvío Cortés, hizo una parada en el desvío Maleza y de allí continuó y paró en el desvío Jiménez, siguiendo de

allí hacia Aguadilla; que poco después de salir del desvío Jiménez, empezó a bajar una pendiente bastante peligrosa y empinada, como de tres o cuatro kilómetros, hasta llegar a la estación de Aguadilla; que al empezar a bajar hay una recta bastante larga y luego siguen algunas curvas y rectas; que al empezar la pendiente notó que el tren tomó bastante marcha y al llegar al sitio donde se volcó venía a una velocidad muy exagerada; que al aproximarse al paso nivel no oyó sonar el pito ni otra señal de alarma; que tampoco sintió aplicación de frenos; que lo que se oye cuando se aplican los frenos es el ruido del aire con que funcionan y fallando el aire, la aplicación de los frenos no produce ruido alguno.

El policía *Francisco Figueroa Ramírez,* testigo del fiscal, declaró que tomó el tren en Buchanan para ir a Yauco; que desde que salió del Campamento Buchanan el tren venía a una velocidad moderada hasta llegar a la "Cuesta Vieja" de Aguadilla; que de allí en adelante notó que corría a una velocidad completamente exagerada.

*Susano González,* Detective de la Policía Insular, declaró como testigo del fiscal, describiendo la topografía del terreno en el trayecto de la "Cuesta Vieja" de Aguadilla. Él no iba en el tren núm. 3 la noche de autos, pero, a preguntas del fiscal, declaró que cuando se aplican los frenos de aire, se siente el ruido del aire y de los frenos mientras los coches se van deteniendo.

*Felipe Morales,* como testigo del fiscal, declaró que actuaba como guardabarrera en el paso nivel donde ocurrió el descarrilamiento; que esa noche no oyó que el tren pitara al aproximarse al paso nivel, pero vió la luz del foco de la locomotora y corrió a poner las cadenas; que logró poner una, pero no pudo cruzar la vía para poner la otra porque era tanta la velocidad que traía el tren que comprendió que no tendría tiempo.

De la prueba de El Pueblo surge también que al llegar el tren al paso nivel de Aguadilla se descarriló uno de los coches y la máquina, yendo a chocar contra un árbol, una casa y la muralla a lo largo de la vía en aquel sitio. Además, al empezar el juicio, el acusado admitió que él era el maquinista del tren núm. 3 que se descarriló y que con motivo del descarrilamiento fallecieron las personas nombradas en la acusación.

Tal fué, en síntesis, la prueba del fiscal. Esta evidencia todo lo que tiende a probar es que en la "Cuesta Vieja" de Aguadilla el tren venía a una velocidad exagerada, y como consecuencia de esto, uno o dos coches y la locomotora se descarrilaron, yendo a chocar con un árbol, con una casa y con la pared de piedras a lo largo de la vía. De esta evidencia no surge explicación alguna para la supuesta negligencia del acusado. Por el contrario, todos los testigos, excepto José Alfonso Hernández, declararon que hasta que el tren empezó a bajar la cuesta, venía corriendo a moderada velocidad. Solamente el testigo José Alfonso Hernández declaró que al salir del desvío Cortés (nótese que después hizo una parada en el desvío Maleza y otra en el desvío Jiménez) venía un poco más ligero, pero inmediatamente explica su aseveración y dice: "porque seguramente ése es un sitio de recta, no hay pendiente allí".

No hay evidencia alguna de que, mientras manejaba la máquina, las facultades del acusado se hallasen inhibidas por efecto de alcohol o por cualquiera otra causa. Además, existe una circunstancia que probablemente no tuvo en cuenta el jurado, y es que el acusado manejaba un tren sujeto a un horario y no aparece que fuese con retraso. ¿Qué interés podía tener el acusado en imprimir velocidad al tren en un sitio de tanto peligro, con riesgo inminente de su propia vida y la de los pasajeros para luego tener que detenerse en Aguadilla hasta que llegara la hora de salir?

La imprudencia temeraria o descuido que contempla el art. 328 del Código Penal no significa una mera falta de cuidado, sino un grado de negligencia o descuido mayor del que se requiere para obtener una indemnización en un caso civil. *Pueblo* v. *Rodríguez,* supra. Y en el caso de *People* v. *Adams,* 124 N. E. 575 (Ill. 1919), citado con aprobación en *Pueblo* v. *Rodríguez,* supra, se dijo por la Corte Suprema de Illinois:

". . . Negligencia crasa es aquélla que toca a los límites de la imprudencia, y negligencia temeraria, tal cual es aplicada al manejo de un vehículo de motor, implica un abandono positivo de las reglas de diligencia y un flemático menosprecio de sus consecuencias, según apunta Babbitt en su obra sobre Vehículos de Motor, sección 1517. Negligencia ordinaria denota meramente una cualidad negativa de parte de una persona a cargo o en el desempeño de un deber. La responsabilidad criminal no puede estar basada en todo acto legal descuidadamente realizado, meramente porque tal descuido produzca la muerte de una persona. Para que la negligencia sea criminal, es necesario que ésta sea imprudente o temeraria y de tal naturaleza que demuestre un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daño a éstos. People v. Falkovitch, 280 Ill. 321, 117 N.E. 398. Ann. Cas. 1918 B, 1077".

Véanse también *People* v. *Burgard,* 36 N. E.2d 558 (Ill. 1941) y la Monografía en 161 A.L.R. 63.

Veamos ahora la explicación que nos da el acusado. Declaró éste que al empezar a bajar la cuesta aplicó el freno de aire y no le respondió y que hizo cuanto estuvo a su alcance para detener el tren y todos sus esfuerzos fueron inútiles; que al llegar al paso nivel de Aguadilla notó que uno de los coches de pasajeros dió un halón y oyó el ruido que hizo al descarrilarse e inmediatamente después la máquina se descarriló también, y no pudo darse cuenta de lo que sucedió después por haber resultado gravemente herido.

La declaración del acusado no fué contradicha, pues si bien algunos testigos de cargo declararon que no sintieron

la aplicación de los frenos, de la prueba de cargo también surge que cuando la bomba de aire se daña, la aplicación de los frenos no hace ruido.

A nuestro juicio, la prueba es insuficiente para sostener un veredicto de culpabilidad en el presente caso. *Procede por tanto, revocar la sentencia y declarar absuelto al acusado.*

El Juez Asociado Sr. Snyder no intervino.

