THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOE NEWSON (Impleaded), Defendant-Appellant.

(No. 55737;

First District—June 21, 1971.

*Rehearing denied July 1, 1971.*

512

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, (Daniel L. Hebert, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and Themis N. Karnezis, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

At a jury trial defendant, Joe Newson, was found guilty with Cleo Hister of the crime of murder and was sentenced to a term of sixteen years to thirty years in the penitentiary. On appeal Newson contends, *inter alia*, that the evidence was insufficient to prove his guilt beyond a reasonable doubt. (Hister is not involved in this appeal.)

Johnny Wilson, the father of the deceased, Richard Wilson, testified for the People that on the evening of April 28, 1968 he was driving his automobile in the vicinity of 65th Street and Harvard Avenue in Chicago when he observed defendant Newson and another person pass in front of his vehicle and enter a building between Harvard and Stewart Avenues. He testified that defendant Newson was carrying a package or bundle under his arm which appeared to contain a gun. Mr. Wilson stated that he did not actually see a gun, but that "I know it was a weapon he had." The witness testified that he then proceeded to a nearby liquor store where he purchased beer and that he returned to his apartment. About 10:00 P.M. Mr. Wilson heard gunfire and he went to 305 West 65th Street where he observed his son lying on the street with a gunshot wound in his face. His son was removed to the hospital where he died of the wound two days later. The witness testified that he knew defendant Newson by the name of "Jesse" since he was a small child, and that Newson had dated the witness' daughter at one time.

Gregory Lee, eleven years of age, testified for the People that on the night in question he was riding on a bicycle with a youth named Tony Lewis. He testified that about 8:30 or 9:00 P.M. he observed two persons, whom he identified at trial as defendant Newson and Hister, stand-

ing about 65 feet into an alley on Normal Avenue between 65th Street and 65th Place, and that one of those persons was holding a shotgun. He stated that there were about four other persons in the alley, but that he did not get a close look at the others because none of them exited the alley. Lee stated that the person he identified as defendant Newson fired the shotgun at him and Lewis, and that (the witness) took cover behind an automobile. Lee further testified that he observed either defendant Newson or Hister fire the weapon at Eugene Adams who had been walking a bicycle along the street. The witness testified that he learned that the deceased had been shot when Adams notified the witness' mother of the shooting. Lee testified that he had seen defendant Newson and Hister earlier in the afternoon on the day of the shooting, and had seen them in a convertible automobile several days before. The witness further testified that on the night of the shooting it was "real dark" outdoors.

The next People's witness was Jesse Parnell, fourteen years of age, who testified that he was sitting on the porch of his home at 6508 Harvard Avenue about 10:00 or 10:30 P.M. on April 28, 1968 when the deceased and Eugene Adams asked to borrow the witness' bicycle and rode off together on the bicycle. (The witness thereupon exhibited much confusion and a hesitancy to testify and was made a witness of the Court.) Parnell testified that after the deceased and Adams had left on his bicycle, Hister came upon the porch, put a shotgun to the witness' head, and demanded to know the whereabouts of the deceased. While Hister was on the porch, defendant Newson and a third, unidentified youth remained on the sidewalk. The witness thereafter testified that he did not see either defendant Newson or Hister after the deceased and Adams rode off on his bicycle, and he further testified that before the bicycle was ridden off, "I never saw anyone who is in court today."

Parnell further testified that after Newson and Hister left the area of the witness' porch, they ran across 65th Street through a gangway between homes on Harvard Avenue. He stated that he then ran from the porch to the corner of 65th Street and Harvard Avenue, and that from that vantage point he observed the deceased and Adams on his bicycle riding on the sidewalk along 65th Street toward Yale Avenue. He testified that he observed a shotgun in Hister's hand and that Hister shot the weapon at the deceased, the discharge of which struck the deceased in the face. He testified that defendant Newson and Hister then entered a "yellowish" automobile parked at 65th Street and Harvard Avenue and drove off.

Upon further examination Parnell testified that when he ran from the porch to the corner of 65th Street and Harvard Avenue, he observed

Hister behind the wall of a building and observed an armsleeve extended out from behind the wall. He stated that he did not know where defendant Newson was in relation to Hister, that he did not see Newson behind the wall, and that he could see nothing behind the wall but the arm. He testified that he heard a gunshot and observed Adams run from the scene. He stated that after the shot was fired, he ran back to his porch and saw no more, but he later testified that after the shot was fired he observed three persons run from the scene and enter and drive off in a yellow hardtop automobile; he stated that he was unable to see the heads or faces of those three persons because of poor lighting conditions. Parnell testified that he recognized defendant Newson because of his "processed hair," but again stated that he did not get a good look at him due to the lighting conditions.

Dale Lee testified for the People that she was thirteen years of age and that on the night in question she was seated on a porch near 65th Street and Harvard Avenue with a group of friends. At approximately 9:00 P.M. defendant Newson came upon the porch and asked one of the witness' friends if he had seen Adams; Newson told the group that Adams had stolen a television set belonging to Newson and that Newson was "going to get him."

Eugene Adams, seventeen years of age, testified for the People that the deceased was his uncle and that he was with him most of the day on April 28, 1968. About 8:00 P.M. the witness had a conversation with Hister and thereafter with defendant Newson concerning a stolen television set. Later the witness and the deceased met several youths at 65th Street and Harvard Avenue and borrowed two bicycles, one from a Larry Witmore and the other from a Steve Lannier, and rode away separately. The witness further testified that he did not know Jesse Parnell and that he did not borrow a bicycle from Parnell.

Adams testified that as he and the deceased were riding, the bicycle the witness was riding "fell apart," forcing the witness to "walk" the bicycle. Hister came out of a gangway as the witness passed, stating "Burn that M. F." and the witness heard a gunshot. Adams testified that he observed other persons in the shadows, but that he did not see defendant Newson. He testified that he fled the scene on foot after hearing the gunshot, that he observed the deceased turning the corner and approaching as the witness fled, and that as he was crossing through a vacant lot on Howard Avenue he heard another gunshot. Adams further testified that he was not riding double with the deceased on the bicycle, and he admitted that he and two other persons took a television set from an apartment near 64th Street and Yale Avenue several weeks before the shooting.

Tony Lewis testified for the People under his proper name of Dwight Gayten. He stated that about 9:00 or 10:00 P.M. on April 28, 1968 he was riding on a bicycle with Gregory Lee when they were accosted on the corner of 65th Street and Stewart Avenue by defendant Newson and Hister. Hister asked the whereabouts of Eugene Adams and, upon receiving an unfavorable reply, Newson drew a pistol. The witness testified that he and Lee were held at gunpoint from fifteen to twenty minutes until a passing police vehicle afforded them an opportunity for escape. Lewis further testified that someone fired a shotgun at him and Lee and that he observed Hister and defendant Newson drive off in a 1962 or 1963 Chevrolet.

Lewis further testified that after the shot was fired at him and Lee he went to the porch of the Krendell Breaux home where he subsequently heard two more gunshots. He testified that he was not there at the time "when he [deceased] got shot" and was not at the scene when the shooting occurred.

Defendant Newson raised the defense of alibi and presented evidence through several witnesses that he was not in the neighborhood of the shooting on the evening of April 28, 1968; that he was with friends and relatives at a specific location elsewhere; that he never lived in the area where the shooting occurred; that he never owned a television set nor ever had one stolen; and that he did not kill or participate in the killing of Richard Wilson.

Dorothy Burwell testified for the defense that she and defendant Newson were at the home of Newson's sister, Bessie Haygood, from 6:00 to 11:00 P.M. on April 28, 1968. They left the Haygood apartment and went to the witness' home, from where Newson left about 12:00 A.M. On cross-examination the witness stated that she had been dating Newson at the time.

Defendant Newson's sister, Dorothy Jones, testified that Newson had been living with her and her husband for about four years. On the date of the shooting she saw Newson about 5:30 P.M. and did not see him again until 12:00 A.M.

Joretha Lee and Fannie Mitchell testified for the defense that they had seen defendant Newson between 6:00 and 10:00 P.M. on April 28, 1968 in the Haygood apartment. Mrs. Haygood testified that she and several friends and relatives were together in the Haygood apartment between 6:00 and 11:30 P.M. attending a party.

Defendant Newson testified that on April 28, 1968 he arrived at the home of his sister between 6:00 and 7:00 P.M. and that he remained there until about 11:30 P.M. He further testified that he did not know co-defendant Hister and that he did not kill the deceased. Hister also took

the stand in his own behalf and denied knowing defendant Newson.

In rebuttal the People called David Breaux, thirteen years of age, who testified that he saw defendant Newson about 7:00 P.M. on April 28, 1968 when the witness was seated on his front porch. He testified that he asked Newson whether he found his television set and that Newson replied in the negative. He stated that Newson did not come upon the porch, and that later while the witness was on the porch he heard two gunshots. Breaux further testified that he had been in the apartment of defendant Newson's brother who lived at 65th Street and Yale Avenue, and the defendant Newson was there at the time.

Warren Parker was called by the People in rebuttal and testified that he had a conversation with defendant Newson at 65th Street and Yale or Wentworth Avenue about 6:00 P.M. on April 28, 1968 and that Newson asked the witness whether he knew anything about anyone breaking into his home. The witness further testified that Newson's brothers had apartments in the area of the shooting, but that he did not know where defendant Newson lived.

Eddie Morgan, janitor of the building at the corner of 65th Street and Yale Avenue, was also called by the People in rebuttal and testified that defendant Newson's brother had lived in an apartment in the building and that he had been evicted. He further testified that defendant Newson had never occupied an apartment in the building.

Several other witnesses were called in rebuttal and in sur-rebuttal and testified to such matters as whether defendant Newson was on the porch of the Breaux home, the descriptions of the assailants, the residences of defendant Newson and his brothers, and the like.

We are of the opinion that evidence adduced by the People was contradictory in many significant respects and failed to establish defendant Newson's guilt beyond a reasonable doubt.

■■ The People have the burden of presenting evidence which shows beyond a reasonable doubt not only that a crime was committed, but that the accused was the party who committed or participated in the commission of the crime. (*People v. Burgard,* 377 Ill. 322.) A judgment of conviction will be reversed on review where the evidence is insufficient or is not sufficiently credible so as to remove all reasonable doubt of guilt and create an abiding conviction of the guilt of the accused. (*People v. Dougard,* 16 Ill.2d 603.) The evidence adduced by the People failed to establish that the crime was committed by or with the aid of defendant Newson.

People's eyewitness, Jesse Parnell, testified that the deceased and Eugene Adams borrowed his bicycle and rode off on it together. He contradicted himself as to whether and when Hister and defendant Newson

came upon the porch of his home, threatening him with a shotgun and asking the whereabouts of Adams. (At one point the witness testified that Hister and Newson demanded to know where the deceased was.) Parnell further testified that the deceased and Adams were riding double on the Parnell bicycle at the time he observed the deceased get shot, but Adams testified that he and the deceased were riding separate bicycles and that the witness in fact did not know Parnell and had not borrowed a bicycle from Parnell. Parnell also testified that he saw Hister shoot the deceased, but upon further examination he testified that the only thing he saw was an arm reaching out from behind the wall of a building, yards away from where the witness was standing and in a darkened vacant lot. Parnell testified that he did not see Hister's body nor did he know where defendant Newson was at the time that he saw the flash from the discharge of the shotgun. While Parnell initially testified that he observed defendant Newson and Hister run from the scene of the shooting and enter and drive off in an automobile, he later testified that he only saw three persons run from the scene and that he did not see the heads or faces of those persons who entered and drove off in the automobile.

Eugene Adams, on the other hand, testified that he and the deceased borrowed bicycles from persons named Whitmore and Lannier, that they rode off separately, and that he was some distance away when the deceased was shot and of which event he did not learn until he arrived home later. The witness also testified that he saw persons in the shadows at the time Hister confronted him while he was walking the bicycle he had been riding, but that he did not see defendant Newson at the scene.

People's witness Gregory Lee testified that he had been in the company of Tony Lewis when he observed persons identified as defendant Newson and Hister some 65 feet into a darkened alley. One of those two persons fired a shotgun at Lewis and the witness. Lee also testified that as he ran for cover behind an automobile, Adams, who was "coming down the street," was shot by one of the persons in the alley; it does not appear from the record that anyone other than the deceased had been shot on the night in question.

Tony Lewis testified that he was with Gregory Lee on the night of the shooting and that defendant Newson and Hister held them at gunpoint with a pistol for a period of fifteen to twenty minutes after they had received an unfavorable response as to the whereabouts of Adams. Lee did not testify that he and Lewis were held at gunpoint and he did testify that he and Lewis were never closer than 65 feet to Hister and Newson.

The testimony of the father of the deceased was that Hister and Newson crossed in front of his automobile in the area of the shooting and

518

that Newson was "packing a weapon." Although the witness testified that the "weapon" was wrapped up and that it was not visible, the witness "knew" that it was a weapon by the way defendant Newson carried the bundle. After observing the "weapon" in Newson's possession, the witness testified, he continued on to a nearby liquor store where he purchased beer.

Further contradictions and inconsistencies exist between the testimony of many of the People's witnesses, most of whom were in their early teen-age years: some of them stated that Hister and defendant Newson were looking for the deceased prior to the shooting, whereas others stated that Hister and Newson were looking for Adams. Many of the People's witnesses were unable to tell the difference between north and south, and east and west, yet they testified as to the locations where they said they saw Hister and Newson and other interested persons. There were also discrepancies between the descriptions of defendant Newson's clothing, the automobile he was allegedly driving, descriptions of defendant Newson himself, the type of weapon brandished, who brandished the weapons, and the like.

■■ Under all the circumstances it cannot be said that the People's evidence proved that defendant Newson was a party to the killing of Richard Wilson. For these reasons the judgment is reversed.

Judgment reversed.

LYONS and GOLDBERG, JJ., concur.